**Dennis HERMAN, Plaintiff,**

v.

**T. & S. COMMODITIES, INC., and Robert E. Sherman, Defendants.**

**No. 82 CIV 4855 (LBS).**

United States District Court,
S.D. New York.

Sept. 15, 1983.

Schulte, Roth & Zabel, David M. Brodsky, New York City, for plaintiff.

Baer, Marks & Upham, Barry J. Mandel, Allan Dinkoff, New York City, for defendants.

## OPINION

SAND, District Judge.

Plaintiff Dennis Herman, an investor in commodities brings this action against T. & S. Commodities, Inc. ("T & S"), a futures commission merchant, and Robert Sher-man, an officer of T & S. Plaintiff alleges that defendants have violated § 4b of the Commodity Exchange Act ("the Act") by engaging in unauthorized trading [1] with respect to Mr. Herman's account. Defendants have moved for summary judgment under Fed.R.Civ.P. 56 on the ground that plaintiff has not demonstrated that defendants acted with the level of scienter required for liability under § 4b of the Act. For reasons set forth below, defendant's motion is denied.

## FACTS

The facts relevant to this motion are largely undisputed. On June 7, 1982, plaintiff, an investor in the silver futures commodities market, transferred his account to T & S. At that time, plaintiff had established a "short" position of 20 September 1982 Comex silver futures. The following day, Mr. Sherman, the plaintiff's account executive at T & S, converted his new client's account to a "long" position of 21 September 1982 futures contracts. Mr. Sherman took this action without the authorization of his client but apparently in the belief that the plaintiff would benefit from his new position. Unfortunately, Mr. Sherman's appraisal of the market proved erroneous, and plaintiff suffered a substantial loss.

## DISCUSSION

Section 4b of the Commodity Exchange Act (7 U.S.C. § 6b (1976)) provides in relevant part as follows:

It shall be unlawful (1) for any member of a contract market, or for any correspondent, agent, or employee of any member, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce, made, or to be made, on or subject to the rules of any contract market, for or on behalf of any other person ...

---

**1.** Plaintiff has also raised some issues with respect to some allegedly fraudulent representations made by Mr. Herman. In this motion, we only address allegations of unauthorized trading, although our discussion of culpability should be applicable to other alleged violations of that section.

(A) to cheat or defraud or attempt to cheat or defraud such other person;

(B) willfully to make or cause to be made to such other person any false report or statement thereof, or willfully to enter or cause to be entered for such person any false record thereof;

(C) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such person; or

(D) to bucket such order, or to fill such order by offset against the order or orders of any other person, or willfully and knowingly and without the prior consent of such person to become the buyer in respect to any selling order of such person, or become the seller in respect to any buying order of such person.

 It is undisputed that unauthorized trading by a broker is an activity that this section directly proscribes. *Haltmier v. Commodity Futures Trading Commission*, 554 F.2d 556, 560 (2d Cir.1977). Cf. also 7 C.F.R. § 166.2(a) (Commodity Futures Trading Commission rule prohibiting brokers from trading without specific customer authorization). There is no requirement that the unauthorized trades be in themselves fundamentally unfair or injurious to the client's interests. Therefore, liability will attach if the broker possesses the requisite degree of culpability *with respect to the act of unauthorized trading*. The sole issue before us, then, is to define that level of culpability.

 Defendants urge that § 4b(A)[2] requires that the broker act with malicious intent or evil motive. In this case, they contend, defendants are shielded from liability because Mr. Sherman acted intending to benefit, rather than to harm, the plaintiff.

Admittedly, the language of § 4b(A) is colorably susceptible of the interpretation defendant seeks to place on it, *i.e.*, that one does not intend to "cheat or defraud" if one intends ultimately to benefit the "victim." The Second Circuit, however, has squarely rejected the interpretation of § 4b that defendants urge upon us here.

> Nor is it important that [the account executive] .... may not have had an evil motive or that he did not subjectively want to cheat or defraud [the customer]. *It is enough that he acted deliberately, knowing that his acts were unauthorized and contrary to instructions. Such knowing, intentional conduct made his acts wilful, and therefore his violations of the statutory prohibition against cheating or defrauding the customer were wilful, in the accepted sense for infractions of this type.*

*Haltmier v. Commodity Futures Trading Commission*, 554 F.2d 556, 562 (2d Cir. 1977) (emphasis supplied). Other courts have reached the same conclusion. *E.g., Silverman v. Commodity Futures Trading Commission*, 549 F.2d 28, 31 (7th Cir. 1977). See *Gordon v. Shearson Hayden Stone, Inc.*, Comm.Fut.L.Rep. (CCH) ¶ 21,-016 (CFTC, April 10, 1980), *aff'd sub nom. Shearson Loeb Rhoades v. CFTC*, 673 F.2d 1339, 2 Comm.Fut.L.Rep. (CCH) at 20, 201 (9th Cir.1982).

There is no principled basis for distinguishing this case from *Haltmier*.[3] De-

---

**2.** We will assume for purposes of this motion that, as defendants urge, this action is brought solely under § 4b(A).

**3.** Defendants have attempted to distinguish *Haltmier* on the ground that in that case, the broker engaged in a series of unauthorized transactions over a period of several weeks. This behavior constituted a "pattern" of unauthorized trading and hence could more readily be termed intentional and calculated

misconduct than Mr. Sherman's actions. (Defendant's Memorandum at 20–23). It would be anomalous if liability hinged on whether the conversion of Mr. Herman's account to a "long" position was accomplished in five transactions in a single day or in a greater number of transactions over a longer period of time. Nor should Mr. Herman's right to recover depend upon whether defendants engaged in similar practices with other customers.

fendants, however, argue that *Haltmier* was incorrectly decided because it did not incorporate the concept of "scienter" as defined by the Supreme Court in *Aaron v. SEC*, 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980) and *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). We disagree.

In the first place, *Aaron* and *Hochfelder* dealt with § 10(b) of the Securities Exchange Act of 1934 and § 17(a) of the Securities Act of 1933, rather than § 4b of the Commodity Exchange Act.[4] Even assuming, however, that the definition of scienter in those two cases is directly applicable to this case, we believe that standard is satisfied.[5]

*Hochfelder* held that "intentional or knowing" misconduct, *as opposed to mere negligence,* was necessary to make out a violation of Rule 10b–5 in a private damage action; *Aaron* extended the *Hochfelder* standard to SEC enforcement actions under § 10(b) and to actions under § 17(a)(1). The *Hochfelder* and *Aaron* opinions therefore did not, as defendants suggest, draw a distinction between merely intentional wrongdoing and maliciously motivated conduct. Indeed, the Second Circuit has held that recklessness is sufficient to satisfy the

*Hochfelder* scienter standard. *E.g., ITT v. Cornfeld,* 619 F.2d 909, 923 (2d Cir.1980).

■ Whatever Mr. Sherman's motives may have been, it is plain that he was more than reckless with respect to the unauthorized nature of the transactions he engaged in; he acted intentionally with full knowledge that he was violating the plaintiff's rights.[6] Since, as previously discussed, unauthorized trading is an activity directly proscribed by § 4b, nothing more need be shown to make out a violation of this section.

In short, the disposition of this motion is controlled by the Second Circuit's opinion in *Haltmier.* Nothing in *Hochfelder* or *Aaron* requires a contrary result.

Accordingly, defendant's motion for summary judgment is denied.

SO ORDERED.

---

4. The transposition of standards from the Securities Acts to the Commodity Exchange Act is by no means automatic. Plaintiff has cited considerable authority for the proposition that less need be shown to make out a violation of § 4b than is required under the Securities Acts. (Plaintiff's Memorandum at 26–30). Because we believe that the *Hochfelder* scienter standard is satisfied in this case, we do not reach this question.

5. We may assume that the Second Circuit in *Haltmier* would agree with our conclusion that there is no conflict between that case and the *Hochfelder-Aaron* doctrine. *Haltmier* was decided the year *after Hochfelder. Aaron* would not likely have changed the result in *Haltmier* since *Aaron* did no more than extend the *Hochfelder* standard to SEC enforcement actions under § 10(b) and to actions brought under § 17(a)(1).

6. The following is taken from Mr. Sherman's deposition:

Q. At the time that you entered into that transaction did you have any understanding as to your right to do so on Mr. Herman's behalf?
A. Yes, sir.
Q. What was your understanding?
A. The understanding was that I had no real right to enter the order.
(Sherman Deposition p. 71)

✻ ✻ ✻ ✻ ✻ ✻

Q. The transactions that you were making during this day were the first transactions that you were making for Mr. Herman's account, is that correct?
A. Yes.
Q. You were making all these transactions without his knowledge or prior consent?
A. Yes, sir.
Q. *And at the time you made those transactions, did you know that you were violating his rights in so doing?*
A. Yes
(Sherman Deposition pp. 106–107).
This knowing and intentional conduct on the part of Mr. Sherman is what separates this case from what defendants repeatedly term a "garden variety" breach of contract action.