William HAGSTROM, Victor Berger,
Edwin Falloon, and Eduardo
Nijensohn, Plaintiff,

v.

Martin E. BREUTMAN, MEB
Investments, Ltd., and Beverly
Associates, Defendant.

No. 83 C 476.

United States District Court,
N.D. Illinois, E.D.

Oct. 3, 1983.

Gregory A. Adamski, Martin A. Schultz, Winston & Strawn, Chicago, Ill., for plaintiff.

Dennis A. Bell, P.C., Chicago, Ill., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

This is an action brought under section 4b of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 6b and 28 U.S.C. § 1331, alleging fraud. In addition, as pendent state claims, plaintiffs charge, among other things, breach of fiduciary duty and unjust enrichment. Defendants have moved, pursuant to Rule 12(b), Fed.R.Civ.P., for the entry of an order dismissing plaintiffs' complaint. Defendants claim that 1) we lack jurisdiction over the subject matter of this suit [1]; 2) plaintiffs have failed to join a party under Rule 19 [2]; 3) plaintiffs have failed to

---

1. We ruled orally that we have subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Defendants withdraw their argument concerning jurisdictional amount. Reply Memorandum in Support of Defendants' Motion to Dismiss at 2 n. * ("Reply Memo").

2. Defendants make this Rule 19 claim in their Motion to Dismiss Amended Complaint (R. 19),

but neither reiterate nor expand upon this in their Memorandum in Support of Defendants' Martin E. Breutman, MEB Investments, Ltd., and Beverly Associates Motion to Dismiss Plaintiffs Amended Complaint ("Defendants' Motion to Dismiss") or in their Reply Memo. However, this claim was made in defendants' original motion to dismiss plaintiffs' complaint. Since then Beverly Associates has been joined

state a claim upon which relief can be granted; and 4) the claims asserted are claims that the parties have previously agreed to arbitrate. For the reasons hereinafter stated, we 1) grant defendants' motion to dismiss count X of plaintiffs' complaint, without prejudice; 2) deny defendants' motion to dismiss count I; 3) stay the action pending arbitration; and 4) hold that Beverly Associates ("Beverly") is a properly joined party.

### I.

On January 24, 1983, plaintiffs filed a complaint pursuant to section 4b of the CEA, 7 U.S.C. § 6b, alleging that defendants had committed fraud. Plaintiffs also claimed that defendants had breached their fiduciary duty and had been unjustly enriched. On April 14, 1983, defendants moved to dismiss the complaint based upon lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, failure to join a party required to be joined under Rule 19, Fed.R.Civ.P., and because the contract between the parties provided for arbitration of any claim arising out of their agreement. (R. 10)

On April 14, 1983, we entered defendants motion to dismiss and gave plaintiffs until April 25, 1983 to file an amended complaint. (R. 12) On April 27, we granted plaintiffs' first motion for an extension of time (R. 14), and on May 5, we granted plaintiffs' motion for a second extension of time. (R. 16) On May 6, 1983, plaintiffs filed an amended complaint. (R. 17) It is this complaint which is the subject of defendants' motions.

### II.

On July 15, 1978, in an Agreement of Limited Partnership of Beverly Associates ("Agreement"), the plaintiffs, and other physicians, formed a limited partnership with MEB Investments, Ltd. ("MEB"), Martin E. Breutman, also a physician, and Morris A. Kravitz, as general partners, for the purpose of investing in commodity futures. The general partners were to have exclusive management and control of the partnership business. The general partners agreed to contribute $10,000 and each of the nine limited partners, $10,000. The four plaintiffs each contributed $10,000. The corporate general partner, MEB, was entitled to receive a management fee of 22% of the aggregate net cash profits from realized commodity transactions computed on a quarterly basis and to receive 50% of the commissions charged by the exclusive broker, Rufenacht, Bromagen & Hertz, Inc. MEB is wholly owned by Breutman and was formed for the purpose of participating in the commodity futures market.

Article XVI of the Agreement contained an arbitration clause which provided that:

> Any controversy or claim of any kind or nature arising out of or relating to this agreement, or the relationship of the parties by virtue of this agreement or any breach thereof, shall be settled by arbitration in accordance with the rules then existing of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof.

Article XVII states that Illinois law will apply to any matters arising between the partners.

From 1978 through January 21, 1981, the general partners, Breutman and MEB, used the limited partners', Beverly, assets to trade commodities[3] on the Chicago Mercantile Exchange, the Chicago Board of Trade and the Commodity Exchange through Rufenacht, Bromagen & Hertz, Inc., with Breutman and MEB acting as the sole account executives.

### III.

Plaintiffs' Amended Complaint of May 6, 1983 contains eleven counts. Counts I and

---

as a defendant and thus this Rule 19 claim appears superfluous.

**3.** At all relevant times, Breutman was a registered broker with the Commodity Futures Trading Commission ("CFTC") under the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 1, *et seq.*, the president of MEB, its sole shareholder, and general partner in Beverly Associates. At all relevant times, he had title to a membership on the International Monetary Market at the Chicago Mercantile Exchange.

X allege that defendants violated section 4b of the CEA, 7 U.S.C. § 6b[4], by (count I) cheating and defrauding plaintiffs and by (count X) excessively trading and churning plaintiffs' account. Jurisdiction is based upon 28 U.S.C. § 1331.

The remaining nine counts are based upon alleged violations of state law. They are brought under the doctrine of pendent jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Count II alleges a duty to account for and a fiduciary duty in the conduct of commodities trading for plaintiffs' benefit. Count III alleges that Breutman breached his contracts with plaintiffs by failing to execute trades in commodity futures contracts in accordance with duly authorized instructions and by using or permitting the use of plaintiffs' assets to benefit other persons. Counts IV, V, VI and VIII allege breach of fiduciary duty. Count VII alleges that MEB breached its contract with plaintiffs by using or permitting the use of plaintiffs' assets to finance the unauthorized purchase and sale of commodities for other persons. Count IX asserts that MEB has been unjustly enriched. Count XI asks for the establishment of a constructive trust on all funds transferred to Breutman and MEB for the benefit of plaintiffs.

## IV. Failure to State a Claim for Relief

Defendants have moved to dismiss Plaintiffs' Amended Complaint. First, they contend that plaintiffs fail to state a claim for relief under 7 U.S.C. § 6b, and thus we lack jurisdiction over the subject matter of this case. Defendants base this assertion on an analogy to Rule 10b-5 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), relying on a footnote in the recent Supreme Court decision, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 389 n. 88, 102 S.Ct. 1825, 1845 n. 88, 72 L.Ed.2d 182 (1982):

---

4. The statutes provides:

§ 6b. **Contracts designed to defraud or mislead; bucketing orders; buying and selling orders for commodities**

It shall be unlawful (1) for any member of a contract market, or for any correspondent, agent, or employee of any member, in or in connection with any order to make, or the making of, any contract of sale of any commodity in interstate commerce, made, or to be made, on or subject to the rules of any contract market, for or on behalf of any other person, or (2) for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, made, or to be made, on or subject to the rules of any contract market, for or on behalf of any other person if such contract for future delivery is or may be used for (a) hedging any transaction in interstate commerce in such commodity or the products or by-products thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof—

(A) to cheat or defraud or attempt to cheat or defraud such other person;

(B) willfully to make or cause to be made to such other person any false report or statement thereof, or willfully to enter or cause to be entered for such person any false record thereof;

(C) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such person; or

(D) to bucket such order, or to fill such order by offset against the order or orders of any other person, or willfully and knowingly and without the prior consent of such person to become the buyer in respect to any selling order of such person, or become the seller in respect to any buying order of such person.

Nothing in this section or in any other section of this chapter shall be construed to prevent a futures commission merchant or floor broker who shall have in hand, simultaneously, buying and selling orders at the market for different principals for a like quantity of a commodity for future delivery in the same month, from executing such buying and selling orders at the market price: *Provided,* That any such execution shall take place on the floor of the exchange where such orders are to be executed at public outcry across the ring and shall be duly reported, recorded, and cleared in the same manner as other orders executed on such exchange; *And provided further,* That such transactions shall be made in accordance with such rules and regulations as the Commission may promulgate regarding the manner of the execution of such transactions.

The language of § 4b is similar to that of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and this Court has recognized an implied cause of action under the Securities and Exchange Commission's Rule 10b–5 on behalf of all securities traders. *Superintendent of Insurance v. Bankers Life & Cas. Co.,* 404 U.S. [6] at 13, n. 9 [92 S.Ct. 165, 169, n. 9, 30 L.Ed.2d 128 (1971)]; *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723 [95 S.Ct. 1917, 44 L.Ed.2d 539 (1975)] (1975). We recognized in *Cannon v. University of Chicago,* 441 U.S. 677 [99 S.Ct. 1946, 60 L.Ed.2d 560] (1979), that the implication of a cause of action under Rule 10b–5 could be "explained historically"; "the Court explicitly acquiesced in the 25-year-old acceptance by the lower federal courts of a Rule 10b–5 cause of action." *Id.,* at 692, n. 13 [99 S.Ct. at 1954, n. 12]. In terms of the number of years and the number of decisions in which an implied cause of action was recognized, the CEA action does not compare favorably with the Rule 10b–5 action. On the other hand, Congress comprehensively reexamined the CEA in 1974 and did not amend the sections under which the cause of action had been implied; no comparable legislative approval or acquiescence exists for the Rule 10b–5 remedy.

However, in the sentence immediately preceding the footnote, the Court stated that "all purchasers or sellers of futures contracts—whether they be pure speculators or hedgers—necessarily are protected by § 4b." *Id.* at 389, 102 S.Ct. at 1845. It also said "The legislative history [of the CEA] quite clearly indicates that Congress intended to protect all future traders from price manipulation and other fraudulent conduct violative of the statute." *Id.* at 390, 102 S.Ct. at 1845.

Defendants claim, however, that plaintiffs cannot be purchasers or sellers of the commodities futures contracts which are the subject of the alleged misconduct because under the terms of the partnership agreement Breutman had total discretion to make trades for the partnership. *See* Agreement, art. V, § A. In short, defend-ants say that plaintiffs' complaint is not "in connection with" any futures transactions, but concerns merely alleged mismanagement of a limited partnership by a general partner.

Defendants urge that claims of mismanagement of an entity, including one engaged in commodities trading, are state claims and may not be asserted under the provisions of the CEA, relying on several Rule 10b–5 cases brought under the Securities Exchange Act of 1934. The gist of their argument is that the relationship between the limited partners and the general partners is akin to that between a trust beneficiary and the trustee of a discretionary trust. In *O'Brien v. Continental Illinois National Bank & Trust Co. of Chicago,* 431 F.Supp. 292 (N.D.Ill.1977), *aff'd in part and rev'd in part,* 593 F.2d 54 (7th Cir.1979), the district court refused to read into all discretionary trusts, pursuant to Rule 10b–5, a requirement that trustees inform their beneficiaries of information prior to making investments totally within the trustees' discretion; Rule 10b–5 protects market transactions, not trust relationships. *O'Brien,* 431 F.Supp. at 296–97. *Cf. Blackmar v. Lichtenstein,* 438 F.Supp. 803, 807 (E.D.Mo. 1977), *aff'd,* 603 F.2d 1306 (8th Cir.1979) ("For the same reasons stated in *O'Brien,* any claims based upon nondisclosure by the trustee would have to fail.")

Defendants' argument is intriguing. Nevertheless, when considering a motion to dismiss, the allegations of a complaint must be viewed in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Russo v. Bache Halsey Stuart Shields, Inc.,* 554 F.Supp. 613, 616 (N.D.Ill. 1982). Applying this and the Supreme Court's repeated admonition that federal statutes enacted to prevent fraud should be construed flexibly to effectuate their remedial purposes, *see, e.g., Curran, supra,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182; *Hirk v. Agri-Research Council, Inc.,* 561 F.2d 96, 103 (7th Cir.1977), we are reluctant to accept defendants' position that plain-

tiffs have failed to state a claim under 7 U.S.C. § 6b.

■ In *Hirk,* the plaintiff charged a violation of section 4b of the CEA of 1976, 7 U.S.C. § 6b. The district court dismissed the complaint on the ground that it did not state a cause of action because the statements and omissions did not occur "in connection with any order to make, or the making of any contract of sale of any commodity for future delivery." *Hirk, supra,* 561 F.2d at 103. Hirk then filed an amended complaint setting forth additional facts supporting the allegation of fraud which the district court also dismissed. Because the deceptive conduct alleged in *Hirk* was solicitation "in connection with" a contract for discretionary trading accounts and occurred prior to actual trading in the account, the district court concluded that it was not within the scope of section 4b. The Seventh Circuit disagreed, holding that the plain meaning of the broad language of section 4b, the legislative history of the 1936 Act, and the Supreme Court's similar interpretation of identical language in the antifraud provisions of the Securities Exchange Act of 1934, demanded a broad, flexible reading of section 4b. *Hirk, supra,* 561 F.2d at 104. The antifraud provision of the CEA, section 4b, 7 U.S.C. § 6b, by its very terms makes it unlawful for any person to deceive or defraud any other person in connection with any futures contract. *Curran, supra,* 456 U.S. at 389, 102 S.Ct. at 1845. The complaint here, however, does not allege deception or fraud in connection with any particular futures contract, but only in connection with defendants' trading generally.

While, in light of the general policy of liberal interpretation of complaints and federal statutes prohibiting fraud in market transactions, we will deny defendants' motion to dismiss count I, unless plaintiffs can establish fraud, misrepresentation or wilful deception by defendants with respect to specific contracts as distinguished from mis-

management or breach of fiduciary duty generally, defendants will ultimately be entitled to summary judgment on count I.

## V. Failure to Plead Fraud with Particularity

Defendants claim that even if plaintiffs have asserted a cause of action under section 4b, counts I and X should be dismissed under Rule 9(b), Fed.R.Civ.P.[5] for failure to plead fraud with the requisite particularity. Plaintiffs do not contest the applicability of Rule 9(b), but contend that their complaint has met the Rule's requirements.

■ Rule 9(b) "is a special pleading requirement and contrary to the general approach of simplified pleading adopted by the federal rules." 5 C. Wright & A. Miller, Federal Practice and Procedure: Civil, § 1297 at 405 (1969). However, Rule 9 must be read together with Rules 8(a)(2), 8(e)(1), and 8(f). *Tomera v. Galt,* 511 F.2d 504, 508 (7th Cir.1975). Rule 8 requires that a plaintiff give through his pleadings notice to defendant of the nature of his claims; Rule 9 lists certain actions in which slightly more notice is needed. In a fraud action, a plaintiff must also state "with particularity" the circumstances constituting the fraud. Plaintiffs have minimally done so in count I.

■ Generally, a complaint is sufficient when it sets forth the time, place, and substance of the allegedly false representations. *Baselski v. Paine, Webber, Jackson & Curtis, Inc.,* 514 F.Supp. 535, 540 (N.D.Ill. 1981). However, the sufficiency of a pleading of fraud varies with the complexity of the transaction; when transactions are numerous and take place over an extended period of time, as here, less specificity is required. *Id.*

In the instant case, count I of the amended complaint adequately sets forth the time period (from 1978 through January 21, 1981), the general character of the alleged fraud (paragraphs 14, *et seq.*), as well as the identity of the accused individuals (Breut-

---

5. Rule 9(b), Fed.R.Civ.P., provides:

   In all averments of fraud or mistake, the circumstances constituting fraud or mistake

shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

man and MEB).[6] As previously indicated, however, it fails to state which positions were allegedly misallocated, which trades were unauthorized, or which profits and losses were allegedly misallocated. It is, at best, a minimally adequate complaint. But this is information that can be gleaned from discovery. *See Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Tomera v. Galt,* 511 F.2d 504, 509 (7th Cir.1975).

■ Insofar as count X seeks damages for churning[7] of plaintiffs' accounts, it is dismissed without prejudice. Under section 4b of the CEA Act, 7 U.S.C. § 6b, churning is cognizable as a fraud. Churning does not involve a single transaction, but rather a series of transactions which are excessive in light of market conditions, commission size, and customer sophistication. *Fey v. Walston & Co.,* 493 F.2d 1036, 1050 (7th Cir. 1974); *Russo v. Bache Halsey Stuart Shields, Inc.,* 554 F.Supp. 613, 617–18 (N.D. Ill.1982).

■ While there is some disagreement among the circuits as to the specificity required in a complaint for churning, *cf. Kaufman v. Magid,* 539 F.Supp. 1088 (D.Mass.1982) *with Zaretsky v. E.F. Hutton & Co.,* 509 F.Supp. 68, 74 (S.D.N.Y.1981), the better rule is that specificity is required when pleading churning. *Russo, supra,* 554 F.Supp. at 618 (N.D.Ill.1981); *Baselski, supra,* 514 F.Supp. at 541 (N.D.Ill.1981). In pleading a churning claim, a plaintiff must identify the securities involved, the nature, amount, and dates of transactions in issue, as well as sufficient facts to allow for a determination of the turnover rate in the account and/or the percentage of the

amount paid in commissions. *Shelley v. Noffsinger,* 511 F.Supp. 687, 692 (N.D.Ill. 1981). Measured against this standard, plaintiffs obviously fail to plead churning with the requisite specificity.

■ Moreover, churning with respect to commodities trading in which there is normally more activity than in securities trading requires, as indicated, factual allegations in addition to just the trades involved, sufficient to constitute a basis for concluding that the volume of trades was not for sound trading purposes but for the purpose of generating excessive commissions. Accordingly, count X must be dismissed, without prejudice.

■ The dismissal of count X does not require us to dismiss the pendent state claims, as count I, alleging fraud under section 4b, may state a federal claim, as we have noted. It is only when a count containing the only federal claim being asserted has been dismissed pursuant to a pretrial motion, that continuing exercise of pendent jurisdiction over state claims is inappropriate. *Shelley v. Noffsinger,* 511 F.Supp. 687, 692 (N.D.Ill.1981).

## VI. Arbitration

Defendants argue that the entire dispute should be referred to arbitration, claiming that the broad arbitration clause in the Agreement mandates this action, even though the complaint is based, in part, on an alleged federal commodity claim. Relying on *C. Itoh & Co. (America), Inc. v. Jordan International Co.,* 552 F.2d 1228 (7th

---

**6.** In addition, the Agreement of Limited Partnership, the Assignment of Interest in Limited Partnership and Limited Power of Attorney, the Subscription Agreement, and the Investment Memorandum were attached as exhibits to Plaintiffs' Amended Complaint and flesh out some of their allegations.

**7.** The term "churning" denotes a course of excessive trading through which a broker advances his own interest, by a commission based on volume, over those of his customer. *Costello v. Oppenheimer & Co.,* 711 F.2d 1361 (7th Cir.1983). There is no single formula for proving that churning has occurred, but gener-

ally a plaintiff must show that (1) the broker exercised control over the transactions in the account; and (2) the amount of trading was excessive. *Id.* at 1368. While some courts have suggested, as a third requirement, that the customer must also be relatively unsophisticated about the market, *Marshak v. Blyth Eastman Dillon & Co.,* 413 F.Supp. 377, 379 (N.D. Okl.1975), the better view is that business sophistication is simply another consideration bearing upon the issue of control. *Costello, supra* at 1367–1369. *See generally* Note, *Churning by Securities Dealers,* 80 Harv.L.Rev. 869 (1967).

Cir.1977), defendants claim that a district court, when presented with an application for a stay of proceedings pending arbitration must grant the stay where two conditions are satisfied: (1) the issue is one which is referable to arbitration under an agreement in writing for such arbitration, and (2) the party applying for the stay is not in default in proceeding with such arbitration. These two conditions appear to be satisfied in this case. First, the Agreement, article XVI, provides for arbitration of "any controversy" arising out of the Agreement or the relationship of the parties. Plaintiffs do not contest the validity of this written provision, but merely argue that it should not be applicable to their alleged federal claims. Second, defendants do not appear to be in default in proceeding with their claim for arbitration.

Plaintiffs concede that federal policy favors arbitration as a means of resolving disputes. Pltfs. Mem. at 9. Arbitration lightens courts' workloads and it usually results in a speedier resolution of controversies. *Sauer-Getriebe v. White Hydraulics, Inc.,* 715 F.2d 348 at 352 (7th Cir.1983). Plaintiffs contend, however, that in cases involving protective federal legislation, the arbitral forum is not adequate to effectuate the policies underlying protective legislation. They cite several cases in support of their position that it would be appropriate for us to rely on the protective legislation exception of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.,* and to deny enforcement of the Agreement's arbitration clause. *See, e.g., Breyer v. First National Monetary Corp.,* 548 F.Supp. 955, 961 (D.N.J.1982) (Arbitration is generally unsuitable for Commodity Exchange Act claims except in the narrow circumstances delineated in 7 U.S.C. § 7a(11). When a claim does not come within the scope of 7 U.S.C. § 7a(11), there is a conflict between the policies of the CEA and the Federal Arbitration Act; therefore, it is appropriate to rely on the protective legislation exception to the Federal Arbitration Act and deny enforcement of the arbitration clause); *Milani v. Conticommodity Services, Inc.,* 462 F.Supp. 405, 407 (N.D.Cal.1976) (Agreements to arbitrate future disputes will not be enforced where a claim of violation of the CEA is sufficiently raised.) Plaintiffs' contention is, however, unpersuasive.

It is well settled that federal policy favors arbitration as a means of resolving disputes. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). The Federal Arbitration Act was specifically aimed at the historical problems of courts refusing to make arbitration agreements specifically enforceable upon the terms established by the parties. *The Anaconda v. American Sugar Refining Co.,* 322 U.S. 42, 44, 64 S.Ct. 863, 865, 88 L.Ed. 1117 (1944). There are, however, judicially created exceptions to the Arbitration Act in cases involving protective legislation. *See, e.g., Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) (securities); *Applied Digital Technology, Inc. v. Continental Casualty Co.,* 576 F.2d 116 (7th Cir.1978) (antitrust); *Allegaert v. Perot,* 548 F.2d 432 (2d Cir.), cert. denied, 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977) (bankruptcy); *Beckman Instruments, Inc. v. Technical Development Corp.,* 433 F.2d 55 (7th Cir.1970), cert. denied, 401 U.S. 976, 91 S.Ct. 1199, 28 L.Ed.2d 326 (1971) (patent). Implicit in this line of cases is the principle that the arbitral forum is not adequate to effectuate policies underlying federal protective legislation.

In contrast, the Seventh Circuit has held that arbitration is proper in a suit based upon alleged fraud in violation of the CEA, 7 U.S.C. §§ 1, *et seq. Tamari v. Bache & Co. (Lebanon) S.A.L.,* 565 F.2d 1194 (7th Cir.1977), cert. denied, 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978). In *Tamari,* the plaintiff relied heavily on *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), in which the Court held that an agreement for arbitration of any controversy that might arise in the future between the parties was void under section 14 of the Securities Act of 1933, 15 U.S.C. § 77n, notwithstanding the provisions of the Arbitration Act. Section 14 provides that "any condition, stipulation, or provision binding any person acquiring a security to waive

compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void." The Seventh Circuit noted that the CEA has no provision comparable to section 14, *Tamari, supra,* 565 F.2d at 1199, and declined to legislate a section 14 provision into the CEA. Moreover, arbitration here would not waive any provision of the CEA or any rules or regulations promulgated by the Commodity Futures Trading Commission.

█ In *Romnes v. Bache & Co.,* 439 F.Supp. 833 (W.D.Wis.1977), plaintiffs had entered into a partnership agreement with a day trader at Bache. The purpose of the partnership was to trade commodities future contracts. The agreement contained an arbitration clause similar to the one at issue here. As here, the *Romnes* plaintiffs claimed that to require arbitration would be contrary to public policy and they analogized the CEA to the federal securities acts. However, the court found no specific provision in the CEA which provides that arbitration shall not be available as a method of resolving disputes under the Act. Thus, "[n]o national policy reason exists for precluding arbitration of claims arising under the CEA." *Id.* at 838. Absent an indication from Congress that arbitration should not be permitted, the federal policy in favor of arbitration should be enforced. *Barron*

*v. Tastee Freez International, Inc.,* 482 F.Supp. 1213, 1216 (E.D.Wis.1980), *citing Romnes.*

While there is some authority for the proposition that the *Wilko* rule, invalidating a broker-customer agreement to arbitrate controversies arising under the Securities Act of 1933, should be extended to federal commodity claims, *see, e.g., Bache Halsey Stuart, Inc. v. French,* 425 F.Supp. 1231 (D.D.C.1977); *Milani v. Conticommodity Services, Inc.,* 462 F.Supp. 405 (N.D.Cal. 1976), there is considerable authority in this and other circuits to the contrary. *See Tamari, supra,* 565 F.2d 1194 (7th Cir.1970); *Romnes, supra,* 439 F.Supp. 833 (W.D.Wis. 1977); *Ingbar v. Drexel Burnham Lambert, Inc.,* 683 F.2d 603 (1st Cir.1982); *Ames v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. 76 Civ. 3085 (S.D.N.Y.) *aff'd,* 567 F.2d 1174 (2d Cir.1977); *Wolfe v. Merrill Lynch, Pierce, Fenner & Smith,* 91 A.D.2d 1023, 458 N.Y.S.2d 250 (S.D.N.Y.1983); *Gamble v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* Fed.Sec.L.Rep. (CCH) ¶ 99,046 (S.D.N.Y. Dec. 30, 1982).

The CEA itself does not bar the use of arbitration. On the contrary, the regulations thereunder suggest that Congress favored its use, but set out certain requirements guaranteeing fair arbitration procedures.[8] Absent language in the CEA lodg-

---

**8.** We note that the regulations of the CFTC govern the substance and form of arbitration clauses in *customer* agreements. 17 C.F.R. §§ 180.1, *et seq.* The CFTC regulations impose strict conditions which assure the broker-customer arbitration agreements are entered into voluntarily and are fair. *Ingbar v. Drexel Burnham Lambert, Inc.,* 683 F.2d 603, 605 (1st Cir.1982). Included in the regulations is a requirement that the customer agreement must contain cautionary language printed in large boldface type, to the following effect:

4) WHILE THE COMMODITY FUTURES TRADING COMMISSION (CFTC) RECOGNIZES THE BENEFITS OF SETTLING DISPUTES BY ARBITRATION, IT REQUIRES THAT YOUR CONSENT TO SUCH AN AGREEMENT BE VOLUNTARY. YOU NEED NOT SIGN THIS AGREEMENT TO OPEN AN ACCOUNT WITH [name]. See 17 CFR 180.1–180.6.

BY SIGNING THIS AGREEMENT, YOU MAY BE WAIVING YOUR RIGHT TO SUE

IN A COURT OF LAW, BUT YOU ARE NOT WAIVING YOUR RIGHT TO ELECT AT A LATER DATE TO PROCEED PURSUANT TO SECTION 14 OF THE COMMODITY EXCHANGE ACT TO SEEK DAMAGES SUSTAINED AS A RESULT OF A VIOLATION OF THE ACT, IN THE EVENT A DISPUTE ARISES, YOU WILL BE NOTIFIED IF [name] INTENDS TO SUBMIT THE DISPUTE TO ARBITRATION. IF YOU BELIEVE A VIOLATION OF THE COMMODITY EXCHANGE ACT IS INVOLVED AND IF YOU PREFER TO REQUEST A SECTION 14 "REPARATIONS" PROCEEDING BEFORE THE CFTC, YOU WILL STILL HAVE 45 DAYS IN WHICH TO MAKE THAT ELECTION.

17 C.F.R. § 180.3(b)(4). Section (3)(b)(2) provides:

(2) If the agreement is contained as a clause or clauses of a broader agreement, the customer must separately endorse the clause or clauses containing the cautionary lan-

ing exclusive jurisdiction in the federal courts or specifically voiding the use of arbitration to resolve certain kinds of disputes, there is no basis for extending *Wilko* to claims arising under the CEA.

■ Our conclusion is bolstered here by the fact that it is by no means clear that the parties in this case stand in a customer-broker relationship. As previously noted, it may very well be that the dispute is merely between limited and general partners over the management of the partnership assets, and thus the CEA may not be applicable at all. Given the foregoing, we are most reluctant not to enforce a broad arbitration agreement which was apparently entered into freely by the parties to this suit. *See Dickinson v. Heinold Securities, Inc.*, 661 F.2d 638, 646 (7th Cir.1981); *Bache Halsey Stuart Shields, Inc. v. Moebius*, 531 F.Supp. 75, 77 (E.D.Wis.1982). Therefore, we grant defendants' motion to compel arbitration under the Agreement, and we stay[9] proceedings in this Court pending arbitration of the dispute.

## VII

Defendants contend that Beverly is not a proper party to this action as it has been dissolved and no longer exists and no relief is sought against it.[10] Plaintiffs claim that Beverly has not filed a dissolution or termination statement with the Recorder of Deeds in Cook County and is thus still in existence. Further, plaintiffs asked Beverly to join in the litigation. Receiving no indication that Beverly would participate, plaintiffs served Beverly and made it a defendant subject to realignment by this Court, pursuant to Rule 19(a), Fed.R.Civ.P.

■ The provisions of Rule 19[11] are designed to protect defendants from multiple, double or inconsistent lawsuits. *Shelley v. Noffsinger*, 91 F.R.D. 263, 266 (N.D. Ill.1981). The clause categorizes those persons whose joinder is desirable from the standpoint of complete adjudication and elimination of relitigation. *Evergreen Park Nursing & Convalescent Home, Inc. v. American Equity Assurance Co.*, 417 F.2d 1113, 1115 (7th Cir.1969). If there are no procedural or jurisdictional bars to joining such a party, Rule 19 requires that the party be joined. *Shelley, supra*, 91 F.R.D. at 266. Since Beverly appears to be still in existence and is within the jurisdiction of this Court, it is a proper party to this litiga-

guage and other provisions specified in this section; ...
17 C.F.R. § 180.3(b)(2).
Neither of the parties has addressed whether these regulations apply or whether, in fact, the arrangement between the limited and general partners qualifies as a customer-broker relationship and can constitute a "customer agreement." *Cf. Rothberg v. Loeb, Rhoades & Co.*, 445 F.Supp. 1336 (S.D.N.Y.1978).

9. Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, requires a district court to "stay the trial of an action" if "the issue involved" is "referable to arbitration" under "an agreement in writing for such arbitration." *Ingbar v. Drexel Burnham Lambert, Inc.*, 683 F.2d 603, 604 (1st Cir.1982). *See also C. Itoh & Co. (America), Inc. v. Jordan International Co.*, 552 F.2d 1228 (7th Cir.1977).

10. *See* Memorandum in Support of Defendants at 13. *But see* Defendants' Motion to Dismiss Amended Complaint at 1, ¶ 3. ("Plaintiffs have failed to join a party under Rule 19.") We admit that we are confused by defendants' inconsistent contentions. Moreover, defendants cite no case in support of either position. *See supra* note 2.

11. Rule 19, Fed.R.Civ.P., provides in part:
**Joinder of Persons Needed for Just Adjudication**
(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

tion. Where several limited partners bring an action against the partnership's general partner, the other limited partners are indispensable parties. *Gottlieb v. Vaicek,* 69 F.R.D. 672 (N.D.Ill.1975), *aff'd,* 544 F.2d 523 (7th Cir.1976). *Cf. Smith v. Smith, Barney, Harris, Upham & Co.,* 505 F.Supp. 1380 (W.D.Mo.1981); *Camden Securities Co. v. Lupowitz,* 500 F.Supp. 653 (E.D.Pa.1980). Whether Beverly should be realigned as a party plaintiff, we need not determine at this time.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss count I is denied. Defendants' motion to dismiss count X for failure to allege churning with sufficient particularity is granted, without prejudice. We stay the action pending arbitration of the entire controversy. Beverly Associates is joined as a proper party. An appropriate order will enter.