**RINFRET, INC. and Pierre A. Rinfret, Plaintiffs,**

v.

**DREXEL BURNHAM LAMBERT INCORPORATED, Defendant.**

No. 86 Civ. 5926 (EW).

United States District Court, S.D. New York.

June 17, 1987.

Zuckerman Mishaan & Chernuchin, New York City, for Rinfret, Inc. and Pierre A. Rinfret; Saul A. Mischaan, of counsel.

Miller & Wrubel, P.C., New York City, for Drexel Burnham Lambert Inc.; Joel M. Miller, of counsel.

EDWARD WEINFELD, District Judge.

Defendant Drexel Burnham Lambert, Inc. (Drexel) moves to dismiss the amended complaint of Rinfret, Inc. (Rinfret) and its chairman, Dr. Pierre A. Rinfret (Dr. Rinfret), charging Drexel with violations of the Commodity Exchange Act (CEA) and pendent state law breach of contract claims. The motion is made pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, as well as Fed.R.Civ.P. 12(b)(6) and 9(b), for failure to plead fraud with the requisite particularity, thereby failing to state a claim upon which relief may be granted.

The complaint alleges that Rinfret was operating as a Commodity Trading Advisor[1] (CTA), whose registration as a CTA and Introducing Broker[2] (IB) was pending with the Commodities Futures Trading Commission[3] (CFTC), but was allowed to operate as a CTA pursuant to an exemption granted by the CFTC.[4] As a CTA, Rinfret advised clients on investments in the commodities and futures markets. Rinfret managed most of the accounts on a discretionary basis, and traded on its own account, as did Dr. Rinfret. Drexel is a

---

1. A "commodities trading advisor" is "any person who, for compensation or profit, engages in the business of advising others ... as to the value or the advisability of trading in any contract of sale of a commodity." 17 C.F.R. § 1.3(bb).

2. An "introducing broker" is "any person who, for compensation or profit, whether direct or indirect, is engaged in soliciting or in accepting others ... for the purchase or sale of any commodity for future delivery ... who does not accept any money, securities, or property (or extend credit in lieu thereof) to margin, guaran-

tee, or secure any trades or contracts that result or may result therefrom." 17 C.F.R. § 1.3(mm).

3. Any person desiring to operate as a CTA or an IB must register with the Commission. See 7 U.S.C. §§ 6f, 6n.

4. Plaintiffs do not include in their complaint the source of this exemption. In opposition to the motion, plaintiffs submitted an exchange of correspondence with National Futures Association officials which purports to explain this allegation.

Futures Commission Merchant[5] (FCM) in the business of purchasing contracts and options on various commodities and futures exchanges and advising certain of its clients as to said matters.

In December 1985, Dr. Rinfret, along with Rinfret's president, Peter Alan Rinfret, negotiated with Frederic C. Wagner, III (Wagner), Vice President of Drexel's Futures Correspondent Division, to have Rinfret clear its clients' trades through Drexel in exchange for Drexel's promise to rebate to Rinfret a percentage of the commissions received in conjunction with that trading activity. Wagner allegedly stated that Drexel would charge Rinfret's clients from $25.00 to $40.00 per "roundturn", or commission charged for a purchase and sale of a commodities or futures contract. Rinfret was to be rebated all but $15.00 per each roundturn commission. It is also alleged that, as to the personal accounts of Dr. Rinfret and Peter Alan Rinfret, Drexel agreed to charge each $15.00 per roundturn for each of their trades.

The parties agreed that Rinfret would not be paid until approval of its registration as an IB, but that Drexel would keep accurate records of commissions charged prior to Rinfret's registration, and would transfer the rebates to Rinfret as soon as its IB registration was completed. The complaint further alleges that Wagner represented that Rinfret could not receive rebates until it was registered as an IB and that Wagner failed to inform Rinfret that it could receive rebates directly if it solely managed discretionary accounts pursuant to a power of attorney.[6]

Relying on the alleged representations, Rinfret began placing all of its trades through Drexel. Rinfret advised its clients of the rebate arrangement, who agreed thereto. From January 1, 1986 through June 12, 1986, Rinfret cleared all of its clients' trades through Drexel, accruing $22,845.00 in rebates. Dr. Rinfret also placed trades with Drexel for his personal account, and alleges that contrary to the agreement, he was overcharged $5,625.00. Wagner from time to time during the trading period informed Dr. Rinfret or Peter Alan Rinfret that the rebates were accounted for and would be paid upon approval of Rinfret's IB registration, and that this was in conformity with both the practice in the trade and applicable laws and regulations.

The complaint further alleges that Rinfret and Dr. Rinfret ceased trading through Drexel on June 12, 1986. Soon thereafter, Drexel notified Rinfret that it would not account for the rebates upon Rinfret's registration, nor would it pay the claimed overcharges on Dr. Rinfret's personal account. Plaintiffs allege that Drexel intentionally misrepresented that it intended to pay the rebates and charge the $15.00 commission rate to Dr. Rinfret to induce plaintiffs to execute trades through Drexel.

Based on the foregoing, plaintiffs alleged violations of § 4b of the Commodities Exchange Act, 7 U.S.C. § 6b, on behalf of both Rinfret and Dr. Rinfret, and breach of contract. In all, five separate counts are alleged under which plaintiffs seek disgorgement of the rebates, punitive damages and a declaratory judgment that it will be entitled to the rebates as soon as it becomes registered as an IB.[7] Defendant asserts, *inter alia*, that allegations of commission overcharges and failure to pay rebates do not state a claim under § 4b of the CEA, and that the rebate arrangement is illegal and unenforceable.

## DISCUSSION

### A. *Scope of Commodities Exchange Act*

Defendant's primary argument is that allegations of commodities commission

---

5. A futures commission merchant includes "[i]ndividuals, associations, partnerships, corporations, and trusts engaged in soliciting or in accepting orders for the purchase or sale of any commodity for future delivery ... that ... accepts any money, securities, or property (or extends credit in lieu thereof) to margin, guarantee or secure any trades or contracts that result or may result therefrom." 17 C.F.R. § 1.3(p)(1).

6. *See* 17 C.F.R. § 1.3(mm)(2)(ii).

7. Rinfret's CTA and IB registrations were approved on September 17, 1986.

overcharges and failure to pay rebates do not state a claim for relief under the antifraud provisions of the Commodities Exchange Act, 7 U.S.C. § 6b. The relevant portions of that section provide:

> It shall be unlawful for any member of a contract market, or for any correspondent, agent or employee of any member, in or in connection with any order to make, or the making of, any contract of sale of any commodity ... for or on behalf of any other person ...
> (A) to cheat or defraud or attempt to cheat or defraud such other person;
> (B) wilfully to make or cause to be made to such other person any false report or statement thereof, or wilfully to enter or cause to be entered for such purpose any false record thereof;
> (C) wilfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such person....

### 1. Commission Overcharges

■ The relevant statutory language provides that the alleged fraud must take place "in or in connection with any order to make, or the making of, any contract of *sale* of any commodity." Because § 6b contains an "in connection with" requirement, the Court should look to judicial in-

terpretations of the antifraud provisions of the Securities Exchange Act of 1934 found in § 10(b)[8] of that Act when deciding whether plaintiffs' allegations state a claim under the CEA.[9]

The alleged agreement between Dr. Rinfret and Drexel was reached prior to any sale of commodities, and is separate and apart from the orders for the purchase and sale of commodities subsequently placed by Dr. Rinfret. In general, misrepresentations concerning the mechanics of a securities transaction, without particular regard to the nature of the securities themselves, have not been held actionable under § 10(b).[10] While courts have recognized causes of action under the CEA for churning[11] and unauthorized trading,[12] neither of which concern the nature of the commodities traded, both of those causes of action involve breaches of a broker's duty to execute only those trades that will benefit the client, and, in the case of unauthorized trading, have previously been cleared with the client.[13]

It is not alleged that Drexel executed trades without the approval of Dr. Rinfret, or that Drexel traded excessively to generate commissions. Dr. Rinfret does not complain that the orders he placed for the purchase and sale of commodities were improperly executed, or that Drexel misled him as to the risk involved in investing in them. Accepting plaintiffs' allegations, the agreement was simply to charge a given brokerage fee, and did not involve commod-

---

**8.** 15 U.S.C. § 78j(b).

**9.** See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran, 456 U.S. 353, 389, n. 88, 102 S.Ct. 1825, 1845, n. 88, 72 L.Ed.2d 182 (1982); Saxe v. E.F. Hutton & Co., Inc., 789 F.2d 105, 109 (2d Cir.1986).

**10.** Nevitsky v. Manufacturers Hanover Brokerage Services, 654 F.Supp. 116, 119, n. 12 (S.D.N.Y. 1987); Bosio v. Norbay Securities, Inc., 599 F.Supp. 1563, 1566 (E.D.N.Y.1985).

**11.** See, e.g., McGinn v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 736 F.2d 1254 (8th Cir. 1984); Evanston Bank v. Conticommodity Services, Inc., 623 F.Supp. 1014 (N.D.Ill.1985); Hagstrom v. Breutman, 572 F.Supp. 692 (N.D.Ill. 1983); Johnson v. Arthur Espey, Shearson, Hammill & Co., 341 F.Supp. 764 (S.D.N.Y.1972).

**12.** See, e.g., Haltmier v. Commodity Futures Trading Commission, 554 F.2d 556 (2d Cir. 1977); Silverman v. Commodity Futures Trading Commission, 549 F.2d 28 (7th Cir.1977); Herman v. T. & S. Commodities, Inc., 578 F.Supp. 601 (S.D.N.Y.1983).

**13.** "Churning" is excessive trading for the purpose of generating commissions without regard to whether such trades are consistent with the investor's interests, Saxe, 789 F.2d at 112; while unauthorized trading occurs where a broker intentionally places trades without first obtaining the approval of the customer, and is actionable under § 4b of the CEA whether or not the trades are injurious to the customer's interests. Herman, 578 F.Supp. at 603.

 

ities of any kind. In short, the contract allegedly breached was not "a contract of sale of any commodity", and therefore is not actionable under § 4b of the CEA.

### 2. *Failure to Pay Rebates*

Drexel's alleged refusal to pay to Rinfret its share of the commissions charged to Rinfret's customers had no effect on the commission rates charged those customers. The rebate arrangement was not made in connection with the making of a contract of sale of a commodity, but was simply an agreement as to how commissions would be shared on commodities contracts to be made in the future. As such, the claim for failure to pay the rebates is not cognizable under the CEA.

■ Moreover, the rebate arrangement between the parties was illegal; therefore, Rinfret may not sue to enforce it. Under § 4d of the CEA, 7 U.S.C. § 6d, it is illegal for any person to be engaged as an IB "unless ... such person shall have registered" with the CFTC. Because Rinfret's IB registration had not been approved when Rinfret "earned" the rebates, Rinfret is not permitted to accept compensation for its activities. Rinfret, a commodities industry professional, may not excuse itself from the dictates of the registration requirement by stating that Drexel did not properly advise it as to the legality of the rebate agreement. Clearly, Rinfret, who proposes to be qualified as a CTA to advise others as to commodity contracts, is presumed to know the law and was under an obligation to investigate it, but did not do so. Notwithstanding that Rinfret alleges it fully disclosed the nature of the rebate arrangement with its customers, it is not

permitted under the regulations to receive compensation for services it rendered before its registration was approved. To permit it to do so would authorize an evasion of the law and the Congressional purpose to protect the purchasing public.[14]

Defendant's motion to dismiss the complaint is granted.[15]

So ordered.

**14.** Registration pursuant to the CEA has been referred to as the "kingpin of the statutory machinery", *Commodity Futures Trading Commission v. British American Commodity Options Corp.*, 560 F.2d 135, 139–40 (2d Cir.1977), *cert. denied*, 438 U.S. 905, 98 S.Ct. 3123, 57 L.Ed.2d 1147 (1978). Under § 4n of the CEA, 7 U.S.C. § 6n, a CTA registrant must submit to the CFTC the name and capital structure of the organization under which the applicant intends to operate as a CTA; the location of its offices; the names, addresses and educational background of the applicant and all partners, officers and directors of the organization under which the applicant will operate; the nature of the applicant's business and the manner in which it gives advice; the scope of the applicant's authority with respect to clients' funds and accounts; and the basis upon which the applicant will be compensated.

**15.** Plaintiff's pendent state law claims are dismissed under the doctrine of *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1960).