554 F.2d 657
 SEABOARD COAST LINE RAILROAD COMPANY, Plaintiff-Appellant,
v.
NATIONAL RAIL PASSENGER CORPORATION, a/k/a Amtrak, a
corporation organized under the Rail Passenger
Service Act of 1970, and the laws of the
District of Columbia,
Defendant-Appellee.
 No. 75-2894.
 United States Court of Appeals,
Fifth Circuit.
 June 22, 1977.
 
 James F. Moseley, Neill W. McArthur, Jr., Jacksonville, Fla., for plaintiff-appellant.
 R. K. Knowlton, Dennis J. Helfman, Chicago, Ill., amicus curiae, for Atchison, Topeka and Santa Fe.
 Donald G. Avery, Robert B. Patterson, Counsel, Legal Dept., Natl. Rail Passenger Corp., Washington, D.C., George L. Hudspeth, Jacksonville, Fla., for defendant-appellee.
 Appeal from the United States District Court for the Middle District of Florida.
 Before WISDOM, GEE, and FAY, Circuit Judges.
 PER CURIAM:
 
 I.
 
 1
 This interlocutory appeal involves the propriety of the district court's referring certain questions to arbitration and the effect of a federal statutory claim raised as a defense to the duty to arbitrate. The appellant Seaboard Coast Line Railroad (SCL) commenced this action on February 12, 1975, seeking compensation at common carrier tariff rates for various services it had performed for the appellee, National Railroad Passenger Corporation (Amtrak). Amtrak invoked the arbitration provisions of a contract it had concluded with SCL by filing a demand for arbitration; Amtrak requested a ruling that the contract covered the services in question,[1] and that these were compensable at cost. Amtrak then moved under 9 U.S.C. § 3[2] to stay the litigation pending arbitration. SCL argued that even if the parties had agreed that the services would be provided at cost such an agreement would violate Sections 2, 3(1), 3(2), and 6(7) of the Interstate Commerce Act, 49 U.S.C. The district court refused to decide the merits of the Interstate Commerce Act claim and referred the case to arbitration. SCL takes this interlocutory appeal from the district court's referral of the dispute to arbitration. We affirm.
 
 II.
 
 2
 In October 1970 Congress, recognizing that a transportation crisis existed because of the deterioration of rail passenger service in the United States, enacted the Rail Passenger Service Act, 45 U.S.C. §§ 501 et seq. (Amtrak Act), for the purpose of preserving and improving needed rail passenger service. The Act authorized the creation of Amtrak and gave it the task of providing "modern, efficient, intercity rail passenger service", § 101, 45 U.S.C. § 501. The Act directs Amtrak to contract with any railroad that so desired, to "relieve (it) . . . of its entire responsibility for the provision of intercity rail passenger service", § 401, 45 U.S.C. § 561, and to assume on May 1, 1971, the responsibility for continuing so much of that service as was designated by the Secretary of Transportation as part of the "Basic System". Such contracts are to be "made upon such terms and conditions as necessary to permit . . . (Amtrak) to undertake passenger service . . .", § 401(a), 45 U.S.C. § 561(a). On April 16, 1971, SCL and Amtrak entered into two agreements, the National Railroad Passenger Corporation Agreement (NRPC Agreement) and the National Railroad Passenger Corporation Arbitration Agreement (Arbitration Agreement). At the same time, Amtrak entered into contracts with nineteen other railroads that were in all material respects identical with the NRPC Agreement and Arbitration Agreement with SCL.
 
 
 3
 The NRPC Agreements commit the signatory railroads, including SCL, to operate passenger train service for Amtrak, to provide ancillary services until 1981, and to allow Amtrak to use their rail lines and other facilities until 1996. In particular, § 3.1 of the NRPC Agreement with SCL provides in part that, ". . . Railroad (SCL) hereby agrees to provide NRPC, over Rail Lines of Railroad, with the services requested by NRPC for or in connection with the operation of NRPC's Intercity Rail Passenger Service . . .". Section 3.3 states in part, "Railroad further agrees to provide and furnish all labor, materials, equipment and facilities necessary to perform the services to be provided under Sections 3.1 and 3.2 . . .."[3] As of September 1, 1974, the NRPC Agreement with SCL was amended. The quoted language, however, was not changed.
 
 
 4
 Article Six of the NRPC Agreement provides that ". . . any claim or controversy between NRPC and Railroad concerning the interpretation, application, or implementation of this Agreement shall be submitted to binding arbitration in accordance with the provisions of the Arbitration Agreement . . .".
 
 
 5
 The Arbitration Agreement signed on April 16, 1971, by SCL and Amtrak provided for the establishment of a National Arbitration Panel to hear disputes arising under the NRPC Agreement. In addition to its authority to interpret the scope of the NRPC Agreement, the Panel was also empowered to determine the scope of the Arbitration Agreement. Section 4.7 of the Arbitration Agreement provides that "Any claim or controversy covering the interpretation, application or implementation of . . . (the Arbitration) Agreement shall be submitted to the National Arbitration Panel for arbitration in accordance with the provisions hereof as interpreted and applied by the National Arbitration Panel." The Arbitration Agreement has not been amended.
 
 
 6
 On May 1, 1971, Amtrak assumed responsibility for operation of intercity rail passenger service through the NRPC Agreements with the contracting railroads, including SCL. SCL necessarily performed for Amtrak all services requisite to the provision of intercity rail passenger service over its lines, and the services underlying this dispute. SCL billed Amtrak under the compensation provisions of the NRPC Agreement for the out-of-pocket costs incurred in providing such services, except for the services involved in this dispute. For these services SCL billed Amtrak at common carrier tariff rates. Amtrak has refused to pay these charges, giving rise to this dispute.
 
 III.
 
 7
 First, the appellant challenges the propriety of referring to arbitration the question whether the disputed services are included in the contract. Amtrak argues that the Arbitration Panel under § 4.7 of the Arbitration Agreement was given power to determine its own jurisdiction. As stated in Burlington Northern, Inc. v. National Railroad Passenger Corp., D.Minn., Feb. 9, 1973, No. 3-72-CIV-264,
 
 
 8
 (t)he Arbitration Agreement between the parties, made applicable by Article VI of their Basic Agreement provides that any controversy covering the 'interpretation, application, or implementation' of the Arbitration Agreement shall be submitted to the National Arbitration Panel. Section 4.7. This means, to me, that the parties have agreed that application of the arbitration procedure, as well as issues under the Basic Agreement, are to be decided by arbitrators. (Emphasis supplied.)
 
 
 9
 Id. at 2. This broad reading of the provisions in question is consistent with the court's position in Lundell v. Massey-Ferguson Services N.V., N.D.Iowa 1967, 277 F.Supp. 940, 942:
 
 
 10
 The arbitration clause herein requires that 'any disputes' arising between the parties 'with respect to the intent, meaning, or effect of any of the provisions' of the contract shall be settled by arbitration.
 
 
 11
 . . . In addition, any dispute as to the intent, meaning or effect of Article 9 itself (the arbitration provision) should be settled by arbitration.
 
 
 12
 It is arguable that Section 4.7 of the Arbitration Agreement is clear in requiring the Panel to determine its jurisdiction to arbitrate substantive claims under the NRPC Agreement, and therefore, makes unnecessary inquiry into the NRPC Agreement itself to determine whether the disputed services present arbitrable issues. United Steelworkers v. Warrior and Gulf Nav. Co., 1960, 363 U.S. 574, 583, n.7, 80 S.Ct. 1347, 4 L.Ed.2d 1409; Local 205, United Elec., Radio & Mach. Workers v. General Electric Co., 1 Cir. 1956, 233 F.2d 85, 101, aff'd, 1957, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028; Cox, Reflections Upon Labor Arbitration, 72 Harv.L.Rev. 1482, 1508-09 (1959). This issue, however, was not raised at the trial stage and is not properly before us. National Railroad Passenger Corp. v. Missouri R. R. Co., 8 Cir. 1974, 501 F.2d 423, 426, n.3. We, therefore, express no view on the question.
 
 
 13
 We must, therefore, look to Article VI, the arbitration provision, in the NRPC Agreement to determine whether the referral to arbitration was proper. At the outset, we note that the policy of the Federal Arbitration Act[4] is to encourage arbitration and to relieve congestion in the courts. An applicant for a § 3 stay is entitled to obtain it, if he makes "a claim (to arbitration) which on its face is one governed by the (applicable) agreement." Galt v. Libbey-Owens-Ford Glass Co., 7 Cir. 1967, 376 F.2d 711, 714. And the court should grant the stay "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute". United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 582-83, 80 S.Ct. 1343, 1353, 4 L.Ed.2d 1403. Two circuit courts, faced with the question, applied these principles in favor of arbitrability with respect to the NRPC arbitration provision. National Railroad Passenger Corp. v. Missouri Pacific R.R. Co., 8 Cir. 1974, 501 F.2d 423; National Railroad Passenger Corp. v. Chesapeake and Ohio Ry. Co., 7 Cir. 1977, 551 F.2d 136.
 
 
 14
 SCL contends that the disputed services are not included in the contract. This contention necessarily involves the "interpretation, application or implementation" of the NRPC Agreement. Although SCL presented evidence that when the contract was amended in 1974, the parties could not reach agreement on the compensation for the disputed services and, therefore, failed to agree on the provision of these services, it is not clear to us that the question of provision of as opposed to compensation for services was a negotiable issue in 1974. The district court was correct, therefore, in referring the contract question to the arbitrator to avoid "usurp(ing) a function which . . . is entrusted to the arbitration tribunal." United Steelworkers of America v. American Manufacturing Co., 1960, 363 U.S. 564, 569, 80 S.Ct. 1343, 1347, 4 L.Ed.2d 1403.
 
 
 15
 We have concluded to defer judicial decision on the applicability of the Interstate Commerce Act to the services at issue and whether the Rail Passenger Service Act renders inapplicable tariff requirements. First, the district court did not address the merits of the statutory issues. We consider it inappropriate to reach the merits without first remanding the case to the district court. But cf. Associated Milk Dealers, Inc. v. Milk Drivers Union Local 753, 7 Cir. 1970, 422 F.2d 546. Furthermore, the district court might be deciding these important statutory questions needlessly, for the arbitrator could find that the services are not covered by the contract. It may also be important to know precisely which services, if any, are included in the contract when the statutory issues are decided. Sound policy, therefore, suggests that we uphold the referral to arbitration. If the arbitrator decides the services are not covered by the contract, the merits of the statutory claim can then be decided. At that point SCL may decide to exercise its right under Section 4.3 of the Arbitration Agreement[5] to petition the Interstate Commerce Commission on the theory that the arbitration award adversely affects its common carrier obligations or it may raise the statutory claim as a defense to enforcement of the arbitration award. In sum, we decide not to reach the merits of the statutory claim until it is necessary to do so. No prejudice to the parties or to the public interest will result from our deferring consideration of the merits.
 
 
 16
 The judgment is AFFIRMED.
 
 
 
 [1]
 The services at issue included Seaboard's movements of Amtrak's locomotive and car wheels, equipment and materials for repair, locomotive and passenger car deadheading, and miscellaneous movements
 
 
 [2]
 This section provides:
 If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.
 
 
 [3]
 Section 3.2 provides in part:
 NRPC shall have the right from time to time to request, and subject to and in accordance with the terms and conditions of this Agreement Railroad thereby agrees to provide, modified or additional services.
 
 
 [4]
 See, Coenen v. R. W. Pressprich & Co., 2 Cir., 453 F.2d 1209, 1212, cert. denied, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972); accord, General Guar. Ins. Co. v. New Orleans General Agency, Inc., 5 Cir. 1970, 427 F.2d 924, 928
 
 
 [5]
 Section 4.3 of the Arbitration Agreement provides:
 Judgment may be entered upon any arbitration award hereunder in any court of general jurisdiction of the District of Columbia or in any United States District Court. However, if NRPC or a Participating Railroad, party to an arbitration proceeding in which an award has been rendered, notifies the other party or parties thereto that compliance with the terms of the award or any part thereof would adversely affect its obligations as a common carrier under Part I of the Interstate Commerce Act or its ability to comply with then existing rail safety requirements promulgated by the United States Department of Transportation, and such notice is accompanied by an opinion of counsel to that effect, either NRPC or such Participating Railroad may within thirty (30) days after the date of such award, submit the matter in dispute to the Interstate Commerce Commission or the Department, whichever is asserted to have jurisdiction, for determination under then applicable law and its rules and regulations; provided, that the submittal shall be limited to that portion of the award which, it is asserted, adversely affects the notifying party's obligations as a common carrier or its ability to comply with such rail safety requirements. Upon such submission, such submitted portion of the award shall be suspended and either superseded by the order of the Commission or the Department entered upon final determination of the proceedings or become effective upon a final determination that the Commission or the Department is without jurisdiction of the matter submitted. The parties shall use their best efforts to obtain a prompt determination of any matter submitted to the Commission or the Department pursuant to this Section 4.3.