George J. CORCORAN, Jr. and Linda Corcoran, Plaintiffs,

v.

SHEARSON/AMERICAN EXPRESS INC., Defendant.

Civ. A. No. C84–706A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 30, 1984.

Carolyn Thorn Thurston, Varner, Stephens, Wingfield, McIntyre & Humphries, Atlanta, Ga., for plaintiffs.

Michael J. Hogan, Shearson/American Express, New York City, Ronald D. Reemsnyder, Neely & Player, Atlanta, Ga., for defendant.

ORDER

FORRESTER, District Judge.

This action is before the court on defendant's motion to compel arbitration and to stay discovery. Relying upon 9 U.S.C. § 3, defendant asks the court to enforce an arbitration agreement between the parties by staying this action and compelling plaintiffs to submit their claims to arbitration. Plaintiffs oppose defendant's motion by arguing that the arbitration agreement is unenforceable as a matter of law. Plaintiffs also argue in the alternative that even if the arbitration agreement is enforceable as to some of plaintiffs' claims, it does not apply to all of plaintiffs' claims and that the non-arbitrable and the arbitrable claims are so intertwined that none of them

should be submitted to arbitration. Finally, plaintiffs argue that even if all the claims are submitted to arbitration, discovery in this case should continue.

Counts I through V of plaintiffs' complaint allege that defendant executed a number of unauthorized trades in plaintiffs' commodities account during the period from February 3 through 8, 1982 and that these trades resulted in losses of at least $20,224.75. Plaintiffs claim that these unauthorized trades constituted violations of the Commodity Exchange Act, breach of contract, fraud, negligence, and gross negligence.

Count VI of plaintiffs' complaint alleges that defendant attempted to cover the deficit in plaintiffs' personal account which resulted from the unauthorized trades by liquidating certain money market funds in a separate account held by Omni, a non-profit corporation of which plaintiffs are officers. Count VI alleges that such liquidation of the Omni funds to cover the deficit in plaintiffs' personal account constituted tortious interference by defendant in plaintiffs' business relations with Omni and resulted in professional embarrassment to plaintiffs.

Count VII of plaintiffs' complaint alleges that defendant, after being forced to restore the assets to the Omni account, took funds from an IRA account held by Mrs. Corcoran and a Keogh account held by Mr. Corcoran to cover the deficit. Count VII alleges that such actions with regard to the IRA and Keogh accounts constituted a breach of fiduciary duty as well as a breach of the express terms of the Keogh account agreement with Mr. Corcoran. Count VIII alleges that the unauthorized liquidation of the IRA and Keogh funds was a willful and malicious breach of fiduciary duty and asserts a claim for punitive damages. Finally, Count IX of the complaint asserts that the liquidation of the IRA and Keogh accounts against the express direction of plaintiffs constituted a conversion of plaintiffs' property. Count X simply asserts that defendant has been stubbornly litigious in settling the claims and thus should be liable for attorney's fees under Georgia law.

## I. ENFORCEABILITY OF THE ARBITRATION AGREEMENT.

Plaintiffs in this case separately signed as part of their commodity customer agreement with defendant a paragraph entitled "Arbitration Agreement." This paragraph provides as follows:

> Any controversy arising out of or relating to my account, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules, then in effect, of the American Arbitration Association of (sic) the Board of Directors of the New York Stock Exchange, Inc. as I may elect. If I do not make such election by registered mail addressed to you at your main office within five days after demand by you that I make such election, then you may make such election. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

> While the Commodity Futures Trading Commission (CFTC) encourages the settlement of disputes by arbitration, it requires that your consent to such agreement be voluntary. You need not sign this Arbitration Agreement to open an account with Shearson Loeb Rhodes, Inc. (see 17 CRF (sic) 180.1–180.6).

> By signing this Arbitration Agreement, you may be waiving your right to sue in a court of law. But you are not waiving your right to elect later to proceed pursuant to Section 14 of the Commodity Exchange Act to seek damages sustained as a result of a violation of the Act. In the event a dispute arises you will be notified that Shearson Loeb Rhoades intends to submit the dispute to arbitration. If you believe a violation of the Commodity Exchange Act is involved and you prefer to request a Section 14 "reparations" proceeding before the CFTC, you will still have 45 days in which to make that election.

The latter two paragraphs were printed in bold face type as required by 17 CFR § 180.3(4) and satisfied the requirements of that section. As noted above, plaintiffs separately signed and dated the Arbitration Agreement.

Section 2 of the United States Arbitration Act provides that "a written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Section 3 of the Act provides for the stay of a proceeding involving a contract subject to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

The United States Arbitration Act embodies a strong federal policy to encourage arbitration and to relieve congestion in the courts. *Seaboard Coastline Railroad Co. v. National Rail Passenger Corp.*, 554 F.2d 657 (5th Cir.1977). The Supreme Court has recently reaffirmed this policy. *Southland Corporation v. Keating*, —— U.S. ——, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984):

> Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate. *Id.* at 856. *See also Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S.

395, 400 [87 S.Ct. 1801, 1804, 18 L.Ed.2d 1270] (1967).

Plaintiffs argue, however, that this court should not enforce an agreement to arbitrate claims for violations of the Commodity Exchange Act, 7 U.S.C. § 1, *et seq.* Plaintiffs rely upon *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). In *Wilko* the Supreme Court held that an agreement to arbitrate future controversies was invalid under Section 14 of the Securities Act of 1933, 15 U.S.C. § 77n. This section provided that "Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void." The Court in *Wilko* concluded that Section 14 rendered void an agreement to submit disputes to arbitration as opposed to trying them in court: "As the protective provisions of the Securities Act require the exercise of judicial direction to fairly assure their effectiveness, it seems to us that Congress must have intended § 14 ... to apply to waiver of judicial trial and review."

Although *Wilko v. Swan* was based upon a construction of Section 14 of the Securities Act of 1933, some lower courts have read it to create a broad exception to the United States Arbitration Act for cases involving "protective federal legislation." These courts have extended this "protective federal legislation" exception to a variety of areas. *See Applied Digital Technology, Inc. v. Continental Casualty Co.*, 576 F.2d 116 (7th Cir.1978) (antitrust); *Allegaert v. Perot*, 548 F.2d 432, 437 (2d Cir.), *cert. denied*, 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977) (bankruptcy); *Beckman Instruments, Inc. v. Technical Development Corp.*, 433 F.2d 55 (7th Cir.1970), *cert. denied*, 401 U.S. 976, 91 S.Ct. 1199, 28 L.Ed.2d 326 (1971) (patent). Several cases have also extended this exception to claims arising under the Commodity Exchange Act. *See Breyer v. First National Monetary Corp.*, 548 F.Supp. 955, 961 (D.N.J. 1982); *Bache Halsey, Stewart, Inc. v. French*, 425 F.Supp. 1231 (D.D.C.1977);

*Milani v. Conticommodity Serv., Inc.*, 462 F.Supp. 405 (N.D.Cal.1976).

Although the cases cited above support plaintiffs' arguments for extending the doctrine of *Wilko v. Swan* to claims arising under the Commodity Exchange Act, there is considerable persuasive authority to the contrary. *See Smokey Greenhaw Cotton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 720 F.2d 1446 (5th Cir.1983); *Ingbar v. Drexel Burnham Lambert, Inc.*, 683 F.2d 603 (1st Cir.1982); *Salcer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 682 F.2d 459 (3d Cir.1982); *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 565 F.2d 1194 (7th Cir.1977), *cert. denied*, 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978); *Hagstrom v. Breutman*, 572 F.Supp. 692 (N.D. Ill.1983); *Romnes v. Bache & Co.*, 439 F.Supp. 833 (W.D.Wis.1977). This court finds the reasoning of the cases upholding arbitration to be more persuasive than the reasoning of the cases which have extended the *Wilko* holding to commodities claims. As the Fifth Circuit has stated:

> Though specifically similar in many respects, the securities market and the commodities market have different histories and functions. We will not pause to detail these differences. It is sufficient to note that the policies that might impel Congress to establish a particular rule for the securities trading industry may find little parallel in the commodities trading industry.

> The more forceful argument against extending the *Wilko* rule to commodities cases is that it would require a judicial policy decision that Congress has not made. We must recollect that the Supreme Court in *Wilko* was not giving effect to its own determination that securities traders required special protections; rather it was effectuating a congressional determination that had been embodied—implicitly at least—in the Securities Acts. The Commodity Exchange Act, by contrast, emphasizes extra-judicial resolution of disputes, and does not generally lead us to conclude that Congress meant to rule out arbitration as a

dispute resolution mechanism in cases arising under that act.

We find support for this reading of congressional intent in the regulations promulgated by the Commodity Futures Trading Commission. The Commission has sanctioned arbitration and issued regulations calculated to protect a customer from an unknowing agreement to arbitrate. We are unable to find a congressional signal that arbitration ought not be available in Commodity Exchange Act cases where the parties have previously entered into a valid arbitration agreement. *Smokey Greenhaw Cotton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 720 F.2d 1446, 1449 (5th Cir.1983).

 This court agrees with the First, Third, Fifth, and Seventh Circuit Courts of Appeals that nothing in the Commodity Exchange Act or its legislative history indicates a congressional intent that agreements to arbitrate claims arising under the Commodity Exchange Act should not be enforceable under the United States Arbitration Act. The court therefore holds that the Arbitration Agreement in this case is not unenforceable simply because some of plaintiff's claims arise under the Commodities Exchange Act.

## II. WHICH CLAIMS MUST BE SUBMITTED TO ARBITRATION?

Having held that the "protective federal legislation" exception does not apply in this case, the court turns to the question of whether plaintiffs' claims are within the scope of the arbitration agreement. If they are, and defendant is not in default in seeking arbitration, then the stay should be granted. 9 U.S.C. § 3. As the Fifth Circuit has stated,

> An applicant for a section 3 stay is entitled to obtain it, if he makes "a claim [to arbitration] which on its face is one governed by the [applicable] agreement." ... And the court should grant the stay "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that cov-

ers the asserted dispute." *Seaboard Coastline Railroad Co. v. National Rail Passenger Corp.,* 554 F.2d 657 (5th Cir. 1977) (citations omitted).

No issue has been raised that defendant is in default in seeking arbitration. Therefore, the only issue is whether plaintiffs' claims are governed by the arbitration agreement.

 This court has no trouble finding that Counts I through V of plaintiffs' complaint are governed by the arbitration agreement. These counts all involve alleged unauthorized trades in plaintiffs' commodities account during the period of February 3 through 8, 1982. As such, they clearly present a "controversy arising out of or relating to (plaintiffs') account, to transactions with (defendant) for (plaintiffs) or to this agreement or the breach thereof ..." and are thus within the scope of the Arbitration Agreement. The court also believes the remaining counts of plaintiffs' complaint are subject to arbitration. The remaining claims concern defendant's allegedly wrongful conduct in covering the deficit in the commodities account. Paragraph 5 of the Commodity Customer Agreement provides, in relevant part:

> I agree to maintain such collateral and/or margin as you may in your discretion require from time to time and will pay on demand any amount owing with respect to any of my accounts .... It is further agreed that if you fail to receive sufficient funds to pay for any commodities, commodity options and commodity futures contracts and/or to satisfy any demands for original and/or variation margin you may without prior demand and notice sell any property held by you in any of my accounts and any loss resulting therefrom will be charged to my account.

After considering the above language the court cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers" the allegations in Counts VI through X. *Seaboard Coastline Railroad Co. v. National Rail Passenger Corp.,* 554 F.2d 657, 660

(5th Cir.1977). The court holds therefore that these claims must be submitted to arbitration as well. *See McBro Planning and Development Co. v. Triangle Electrical Construction Co.,* 441 F.2d 342 (11th Cir.1984). Defendant's motion to compel arbitration is, therefore, GRANTED, and this action is hereby STAYED. 9 USC § 3.

### III. WHETHER DISCOVERY SHOULD BE STAYED?

The final remaining issue is whether discovery under the *Federal Rules of Civil Procedure* should continue pending arbitration. Plaintiffs rely on *International Association of Heat and Frost Insulators and Asbestos Workers Local 66 v. Leona Lee Corp.,* 434 F.2d 192 (5th Cir.1970), to argue that discovery should continue. In that case the district court had ordered parties to a collective bargaining agreement to submit to Trade Board and Arbitration proceedings, provided for discovery by the parties under the *Federal Rules of Civil Procedure* in aid of the Trade Board and Arbitration proceedings, and retained jurisdiction "pending determination of the Trade Board and Arbitration proceedings." The Fifth Circuit affirmed the district court and found that it did not exceed its jurisdiction when it ordered arbitration and that

> [T]he district court did not err when it specifically made available to the parties federal discovery procedures "to the extent necessary for the presentation of matters submitted for Trade Board and Arbitration determination." Such order is consistent with the District Court's retention of jurisdiction and effectuates the policy favoring arbitration. 434 F.2d at 194.

The court in *Leona Lee* did not explain how allowing discovery under the *Federal Rules of Civil Procedure* "effectuates the policy favoring arbitration." Later cases have pointed out that 9 U.S.C. § 7 provides for discovery by the arbitrator and that additional discovery under the Federal Rules would create "dual discovery" which would be contrary to the very expense and delay saving purpose for arbitration in the first place. *See Mississippi Power Com-*

pany v. Peabody Cole Co., 69 F.R.D. 558 (S.D.Miss.1976). In *Mississippi Power Co.,* Circuit Judge Coleman, sitting by designation as a judge for the Southern District of Mississippi, found several problems with allowing parties the opportunity to engage in discovery under the Federal Rules during a Section 3 stay. First and foremost was the problem of dual discovery with its attendant expense. Second, Judge Coleman noted that a majority of the courts which had faced the issue had decided against allowing discovery to proceed under the rules. *See, e.g., H.K. Porter Co. v. Local 37, United Steel Workers of America,* 400 F.2d 691 (4th Cir.1968); *Econo-Car Intl., Inc. v. Antilles Car Rentals, Inc.,* 61 F.R.D. 8, 10 (D.C.Vt.1973), *rev'd on other grounds,* 499 F.2d 1391 (3d Cir.1974); *Local Lodge 1746, I.A.M. & A.W. v. Pratt & Whitney Division of United Aircraft Corp.,* 329 F.Supp. 283, 286–87 (D.C.Ct. 1971); 7 *Moore's Federal Practice* ¶ 81.-05[7] at 81–82. Judge Coleman found that the Fifth Circuit's statement that allowing continued discovery would effectuate the policy favoring arbitration was contrary to the overwhelming weight of authority. Since the Fifth Circuit had not explained its statement nor given any authority for it, Judge Coleman concluded that the decision in *Leona Lee* "must have been grounded on some factor not made clear in the opinion and is not a controlling precedent." 69 F.R.D. at 565. Ruling that discovery under the Federal Rules would be contrary to the policies favoring arbitration, Judge Coleman issued an order staying all further discovery pending arbitration.

The *Mississippi Power* decision was apparently not appealed, despite Judge Coleman's invitation to the parties to do so. *See* 69 F.R.D. at 568. Neither the Fifth nor Eleventh Circuits have, as far as this court can ascertain, dealt with the issue of discovery pending arbitration since *Leona Lee.* This court is, therefore, faced with the problem of deciding whether to regard the statement made by the court in *Leona Lee* that discovery under the Federal Rules would effectuate the policy favoring arbitration as binding precedent or simply *dic-*

ta. The court chooses to regard it as *dicta.* Several courts have held that the granting of discovery during a Section 3 stay lies within the court's discretion. *See, e.g., Bigge Crane & Rigging Co. v. Docutel Corp.,* 371 F.Supp. 240 (E.D.N.Y.1973). It appears to this court that the *Leona Lee* court simply approved the trial court's decision to allow continued discovery while the case was before arbitration. The *Leona Lee* court did not say that discovery should always be permitted, nor did it say that discovery should never be permitted. The court may well have regarded the trial court's decision as a sound exercise of discretion.

 Given the weight of authority favoring a stay of discovery pending arbitration and the strong policy reasons which favor such a stay, and given the tenuous nature of the Fifth Circuit's treatment of the issue, this court concludes that it has the discretion to grant a stay of discovery pending arbitration and that this discretion should properly be exercised in granting the stay. *See Recognition Equipment, Inc. v. NCR Corp.,* 532 F.Supp. 271 (N.D. Tex.1981) (following *Mississippi Power* rather than *Leona Lee* ). 7 Moore's Federal Practice ¶ 81.05[7] at 81–82. The court hereby STAYS all further court-sanctioned discovery under the *Federal Rules of Civil Procedure* pending arbitration.

## IV. CONCLUSION.

In sum, defendant's motion to compel arbitration and stay discovery is GRANTED. This action is hereby STAYED pending arbitration. The Clerk of Court is DIRECTED to close this case for statistical purposes.