**Martha OLSON, Plaintiff,**

v.

**PAINE, WEBBER, JACKSON & CURTIS, INC., Defendant.**

Civ. No. F 85–397.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Feb. 3, 1986.

Martin T. Fletcher, Rothberg, Gallmeyer, Fruechtenicht & Logan, Fort Wayne, Ind., for plaintiff.

J. Timothy McCaulay, Helmke, Beams, Boyer & Wagner, Fort Wayne, Ind., for defendant.

ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on defendant's Motion to Stay Proceedings and to Compel Arbitration filed on November 8, 1985. The motion has been fully briefed and a hearing on this matter was held on December 10, 1985. In a telephone conference held on December 12, 1985, plaintiff's counsel contended that there existed further discrepancies in the form of agreement that plaintiff signed vis-a-vis the Commodity Futures Trading Commission's regulation, 17 C.F.R. § 180.3, as amended in 1983. Plaintiff's counsel was therefore given five days to bring those discrepancies to the court's attention. No such brief was filed. For the following reasons, defendant's motion to stay the proceedings and compel arbitration will be granted.

*Statement of the Facts*

The undisputed facts in this case are as follows. In 1984 plaintiff Martha Olson (Olson) established an account with the defendant Paine, Webber, Jackson & Curtis, Inc. (Paine Webber) for the trading of commodities. Paine Webber is a corporation engaged as a commodity broker and is a futures commission merchant as defined by the Commodity Futures Trading Commission (CFTC) Regulations and the Commodity Exchange Act (CEA). 17 C.F.R. § 1.1 (1985); 7 U.S.C. § 2 (1980 and Supp.1985).

On January 25, 1984, Olson signed both a Client Commodity Agreement and an agreement that required that any dispute between defendant and Olson be resolved by binding arbitration. The arbitration agreement contained the words "you need not sign this agreement to open an account . . .".

During the morning of June 5, 1984, Olson placed an order for the purchase of two (2) silver contracts at a price of $932.00 with Stan Ford (Ford), an account executive for Paine Webber. This order was filled during the afternoon of June 5, 1984, the same day the order was placed.

It is disputed whether Olson, at the time she placed her order with Ford, told him that she wanted the silver contracts bought before noon on June 5, 1984, and if this was not done the order was to be cancelled.

Since Olson planned to be out of town for several days, she called Ford around noon on June 5, 1984, to see if he had purchased the silver contracts. At this time, Ford told Olson that her order had not yet been filled. It was not until June 9, 1984, that Olson learned from her brother that Ford had purchased the silver contracts on the afternoon of June 5, 1984.

Olson promptly called Ford to tell him that the contract had been filled against her instructions. Both Ford and the office

manager of Paine Webber told Olson that they were unaware of any restriction that Olson had placed on her order of June 5, 1984. She was also told that she would have to "pay for" the filled order and suffer the consequences.

Since Olson failed to pay for the silver contracts and meet a margin call, Paine Webber proceeded to exercise its right of liquidation. As a result of this sale Olson lost approximately $17,000 to $18,000. During this time period the market price of the silver future contract declined from $932.00 to $870.00. Defendant's net loss on the transaction was offset against positive cash deposits Olson had with Paine Webber, and a debit balance of about $400.00 remained in Olson's account.

On September 24, 1984, Olson commenced this present action against Paine Webber. Olson alleges four causes of action. Count I alleges a violation of both the Commodity Exchange Act, 7 U.S.C. § 1, *et seq.*, and the Commodity Futures Trading Commission's Regulations, 17 C.F.R. § 180.3. The second claim alleges a breach of fiduciary duty. Counts III and IV in effect allege that certain unauthorized trades in the plaintiff's commodities account constitute a breach of contract and constitute a failure to exercise reasonable care.

On November 8, 1985, Paine Webber moved the court to stay proceedings and compel arbitration under the predispute arbitration agreement.

*Issue Before the Court*

The issue before the court is whether the predispute arbitration agreement form that Paine Webber provided Olson with, and Olson voluntarily signed, sufficiently complies with the CFTC's Regulation § 180.3 to form a valid agreement to arbitrate disputes that arise between the parties.

In 1983 the CFTC added two entirely new sections to the existing § 180.3. New § (b)(4) requires that "the customer will have the opportunity to elect a qualified forum for conducting the [arbitration] proceeding." The second addition to § 180.3, new § (b)(5), directs that the "agreement must acknowledge that the futures commission merchant, ... will pay any incremental fees which may be assessed by a qualified forum for provision of a mixed panel ...".

The arbitration agreement form that Paine Webber provided to Olson did not contain the information required by §§ (b)(4) and (b)(5) of the 1983 amendment to § 180.3. Apparently Paine Webber failed to update the form of its arbitration agreement to conform to these new requirements.

*Applicable Law*

For an arbitration agreement to be valid it must comply with the regulations adopted by the CFTC under the authority of the federal statutes. Regulation § 180.3 provides in pertinent parts:

> (a) The use by customers of the dispute settlement procedures established by contract markets pursuant to the Act or this part or the arbitration or other dispute settlement procedures specified in an agreement under paragraph (b)(3) of this section shall be voluntary. The procedures so established shall prohibit any agreement or understanding pursuant to which customers of members of the contract market agree to submit claims or grievances for settlement under said procedures prior to the time when the claim or grievance arose, except in accordance with paragraph (b) of this section.
>
> (b) No futures commission merchant, introducing broker, floor broker, commodity pool operator, commodity trading advisor, or associated person shall enter into any agreement or understanding with a customer in which the customer agrees, prior to the time the claim or grievance arises, to submit such claim or grievance to any settlement procedure except as follows:
>
> > (1) Signing the agreement must not be made a condition for the customer to utilize the services offered by the futures commission merchant, inroduc-

ing broker, floor broker, commodity pool operator, commodity trading advisor or associated person.

(2) If the agreement is contained as a clause or clauses of a broader agreement, the customer must separately endorse the clause or clauses containing the cautionary language and other provisions specified in this section.

(3) The agreement may not require the customer to waive the right to seek reparations under section 14 of the Act and Part 12 of these regulations. Accordingly, the customer must be advised in writing that he or she may seek reparations under section 14 of the Act by an election made within 45 days ...

(4) The agreement must advise the customer that, at such time as he or she may notify the futures commission merchant, introducing broker, floor broker, commodity pool operator, commodity trading advisor or associated person that he or she intends to submit a claim to arbitration, or at such time as such person notifies the customer of its intent to submit a claim to arbitration, the customer will have the opportunity to elect a qualified forum for conducting the proceeding ...

(5) The agreement must acknowledge that the future commission merchant, introducing broker, floor broker, commodity pool operator, commodity trading advisor or associated person will pay any incremental fees which may be assessed by a qualified forum for provision of a mixed panel, unless the arbitrators in a particular proceeding determine that the customer has acted in bad faith in initiating or conducting that proceeding.

(6) The agreement must include the following language printed in large boldface type:

THREE FORUMS EXIST FOR THE RESOLUTION OF COMMODITY DISPUTES: CIVIL COURT LITIGATION, REPARATIONS AT THE COMMODITY FUTURES TRADING COMMISSION (CFTC) AND ARBITRATION CONDUCTED BY A SELF-REGULATORY OR OTHER PRIVATE ORGANIZATION....

BY SIGNING THIS AGREEMENT YOU: (1) MAY BE WAIVING YOUR RIGHT TO SUE IN A COURT OF LAW; AND (2) ARE AGREEING TO BE BOUND BY ARBITRATION OR ANY CLAIMS OR COUNTERCLAIMS WHICH YOU OR [NAME] MAY SUBMIT TO ARBITRATION UNDER THIS AGREEMENT....

YOU NEED NOT SIGN THIS AGREEMENT TO OPEN AN ACCOUNT WITH [NAME].

*Arguments of the Parties*

Olson argues that the arbitration agreement does not conform to the Commodity Futures Trade Commission's Regulations, 17 C.F.R. § 180.3, as these regulations existed as of the date of the signing of the agreement, and therefore, the predispute arbitration agreement is void. Paine Webber, on the other hand, advances four arguments in support of its motion to stay the proceedings and to compel arbitration of all claims raised by Olson:

(1) the deficiencies in the agreement concern protection of customer's rights and not whether the agreement was entered into voluntarily, therefore, these deficiencies can be corrected without any disadvantage to Olson;

(2) the present arbitration agreement tracks CFTC guidelines (but for two insubstantial alterations) and therefore is valid and enforceable;[1]

1. In support of this argument defendant draws a distinction between pre-1983 amendments to 17 C.F.R. § 180.3 and post-1983 amendments. The pre-1983 amendments, it is argued, are designed as protections against involuntary contract obligations, while the post-1983 amendments are designed to protect rights that already existed under § 180.3. A deficiency that occurs under the post-1983 amendments is characterized as technical, insubstantial and able to be corrected without a disadvantage to the customer. The present deficiencies, since they occur under the post-1983 amendments do not affect the voluntariness of the contract and can be remedied

(3) a strong federal policy to enforce predispute arbitration agreements under the CEA favors enforcement of the present agreement;

(4) all claims raised by Olson are within the scope of the arbitration agreement and therefore are required to be arbitrated.

*Discussion*

1. Deficiencies in a Predispute Arbitration Agreement

Olson relies on *Curran v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 622 F.2d 216 (6th Cir.1980), and *Ames v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 567 F.2d 1174 (2d Cir.1977), as providing support for her argument that arbitration agreements that do not conform to CFTC regulations are void. In both *Curran* and *Ames* the plaintiffs had signed the same standard form commodity agreement that included, within the body of the form, an agreement to arbitrate any disputes. This agreement did not require a separate signature for the arbitration agreement. While defendant's form complied with earlier CFTC regulations, it did not comply with the regulations as they existed at the time of the suit.

In 1976 the CFTC adopted regulations under § 7a(11) that provided that "no predispute arbitration agreement may be enforced unless the agreement is contained in a separate document executed by the customer and contains adequate warnings in large print." *Curran*, 622 F.2d at 226. The court in both *Curran* and *Ames* gave the CFTC regulation retroactive effect and found that the arbitration agreements were invalid because plaintiffs had not separately signed them. These violations of the CFTC regulations go to the conditions of formation of the arbitration agreement.

The purpose of the CFTC regulations are to ensure that the customer voluntarily enters into a predispute agreement to arbitrate. Three mandatory conditions with respect to predispute arbitration agreements required under 17 C.F.R. § 180.3 are: "1) that the agreement not be a condition of access to the market; 2) that the customer sign separately any arbitration agreement; and 3) that the arbitration agreement contain appropriate bold-faced warnings." *Ames*, 567 F.2d at 1176 n. 2.

Olson cites *Marchese v. Shearson Hayden Stone, Inc.*, 734 F.2d 414 (9th Cir. 1984), as further support for her argument that an arbitration agreement that does not meet the requirements set forth in 17 C.F.R. § 180.3 is invalid. In *Marchese*, the Ninth Circuit affirmed a district court's decision that held a predispute arbitration agreement invalid because the arbitration clauses were not "separately endorsed" and did not "contain cautionary language in bold-faced type." *Id.* at 417. This deficiency existed at the stage of formation of the arbitration agreement. A subsequent version of an arbitration agreement that contained the required cautionary language was held valid. *Id.* at 417.

A common thread that runs through *Curran, Ames* and *Marchese* is that the § 180.3 deficiencies existed at the time that the customers signed the arbitration agreements and could affect the voluntariness of the agreement. These cases, however, did not involve a deficiency that affected the customer only at the arbitration stage.

2. Deficiencies that can be Remedied

First, defendant argues that the arbitration agreement is valid because the deficiencies are technical and insubstantial and do not concern protected rights. Defendants relies on *Ingbar v. Drexel Burnham Lambert, Inc.*, 683 F.2d 603 (1st Cir.1982), as support for the position that an arbitration agreement is valid if the violation does not involve the formation of the agreement.

In *Ingbar*, the plaintiff claimed a technical violation of § 180.3(b)(3) because he was not notified by the defendant in writ-

without any disadvantage to Olson. While defendant's argument may be correct, the example fails to fit the model since the defendant proceeds to use a case that was decided under the pre-1983 regulations, *Ingbar v. Drexel Burnham Lambert, Inc.*, 683 F.2d 603 (1st Cir.1982), to support its argument.

ing of his right to seek reparations "at the time when [it] ... notifie[d] [him] of [its] intention to arbitrate." *Ingbar,* 683 F.2d at 608. The court in *Ingbar* looked to the purpose behind the noncomplied with regulation noting that "the obvious purpose of the (b)(3) 'notice' requirement is to guarantee that a customer learns about his reparation rights in time to invoke it." *Id.* The court found that since Ingbar's elaborate arguments were based upon these regulations "he must have been aware of this right." *Id.*

The court concludes that "[e]ven were the facts otherwise, it is doubtful that we would go beyond the remedy that the regulation would require to make a claimant whole—an extension of the 45-day time limit for electing reparation proceedings. (Citations omitted.) There is no reason here, however, to impose even that remedy, let alone (for purposes of deterrence, enforcement, or the like) so serious a sanction as invalidation of the arbitration agreement." *Id.*

*Ingbar* was cited with approval by the court in *Hagstrom v. Breutman,* 572 F.Supp. 692, 700–01 (N.D.Ill.1983), when the court noted that "we are most reluctant not to enforce a broad arbitration agreement which was apparently entered into freely by the parties." *Id.* at 701.

3. Application

■ The second argument that defendant raises is that the arbitration agreement tracks the CFTC regulations and that the deficiencies are two technical alterations that can be remedied.

Turning to the facts of the present case, Olson admits that there is an arbitration agreement in writing, voluntarily entered into and separately signed before the dispute arose. She does not admit, however, that the agreement is valid. Indeed, she claims that either the Commodity Exchange Act, 7 U.S.C. §§ 1–24, or alternatively, regulations of the CFTC, 17 C.F.R. §§ 180.1–180.6, make the agreement in this case invalid and therefore unenforceable.

Paine Webber concedes that the arbitration agreement is deficient in two respects: (1) the agreement provides that the *broker* shall select the forum not the customer, as regulation § 180.3(b)(4) requires, and (2) the agreement is silent on the fact that Paine Webber must pay "any incremental fees which may be assessed by a qualified forum for provision of a mixed panel, unless the arbitrators in a particular proceeding determine that the customer has acted in bad faith in initiating or conducting that proceeding." 17 C.F.R. § 180.3(b)(5).

Paine Webber argues that if arbitration proceeded on the condition that: (1) Olson is allowed her right of selection of forum under § 183.3(b)(4) and that (2) Paine Webber is responsible for any incremental fees, pursuant to § 183.3(b)(5), the deficiencies in the predispute arbitration agreement would be corrected.

This court finds defendant's argument persuasive in that it complies with § 180.3 and holds the parties to an arbitration agreement that they freely entered into. Paine Webber's arbitration agreement tracks the CFTC regulations in spirit if not in letter. Olson voluntarily entered into a predispute agreement and cannot now look to technical deficiencies to defeat the agreement. This court finds that Olson is entitled to select an arbitration forum and to have the defendant pay for incremental fees unless the present suit is found to have been brought in bad faith, then Olson is required to pay the incremental fees under § 180.3(b)(5).

*Federal Policy Favors Endorsement of Agreements to Arbitrate under the CEA*

■ The third argument that defendant presents is that in addition to the statutory basis for enforcement of the arbitration agreement a strong federal policy compels enforcement of the arbitration agreement.

Arbitration lightens the courts' workloads and it usually results in a speedier resolution of controversies. *Sauer-Getriebe v. White Hydraulics, Inc.,* 715 F.2d 348, 352 (7th Cir.1983). Passage of the Federal Arbitration Act, 9 U.S.C. § 1, *et*

*seq.*, was motivated "first and foremost, by a Congressional desire to enforce agreements into which parties had entered ...". *Dean Witter Reynolds v. Byrd,* — U.S. —, —, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985). Section 3 of the Arbitration Act requires a district court to "stay the trial of an action" if "the issue involved" is referable to arbitration under an agreement in writing for such arbitration. 9 U.S.C. § 3.[2]

This strong federal policy favors the enforcement of privately made agreements to arbitrate when one of the parties files a motion to compel "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Byrd,* — U.S. at —, 105 S.Ct. at 1241.

There are, however, judicially created exceptions to the Arbitration Act. In cases involving protective legislation, such as the area of federal securities, the arbitral forum is not adequate to effectuate federal policies. *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953).

However, this case arises under the Commodity Exchange Act and "nothing in the Commodity Exchange Act or its legislative history indicates a Congressional intent that agreements to arbitrate claims arising under the Commodity Exchange Act should not be enforceable under the United States Arbitration Act." *Corcoran v. Shearson/American Express,* 596 F.Supp. 1113, 1116 (N.D.Ga.1984); *see Tamari v. Bache & Co. (Lebanon) S.A.L.,* 565 F.2d 1194 (7th Cir.1977), *cert. denied,* 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978).

This court therefore finds that the arbitration agreement in this case arising under the CEA is enforceable.

*All Claims Raised by Olson are Subject to the Arbitration Agreement*

The court turns to the question of whether plaintiff's claims are within the scope of the arbitration agreement. Plaintiff apparently concedes that all of her claims are subject to arbitration if the arbitration agreement is valid, because she fails to raise any argument to the contrary. A brief discussion of this issue, however, is in order.

If all of the counts raised by plaintiff are to be arbitrated, and defendant is not in default seeking arbitration, then the stay should be granted. 9 U.S.C. § 3. As the Fifth Circuit has stated:

> An applicant for a § 3 stay is entitled to obtain it, if he makes "a claim [to arbitration] which on its face is one governed by the [applicable] agreement." ... And the court should grant the stay "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."

*Seaboard Coastline Railroad Co. v. National Rail Passenger Corp.,* 554 F.2d 657, 660 (5th Cir.1977) (citations omitted).

No issue has been raised that defendant is in default in seeking arbitration. Therefore, the only issue is whether plaintiff's claims are governed by the arbitration agreement.

Count I of plaintiff's complaint alleges violations of the Commodity Exchange Act. As previously shown, the arbitration agreement between the parties is valid. This court is "unable to find a congressional signal that arbitration ought not be available in Commodity Exchange cases ...". *Smoky Greenhaw Cotton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 720 F.2d 1446, 1448 (5th Cir.1983), and therefore the alleged violations of the Commodi-

2. 9 U.S.C. § 3 provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

**1324**

ty Exchange Act are subject to arbitration. *See, e.g., Corcoran v. Shearson/American Express,* 596 F.Supp. at 1113.

Count II of plaintiff's complaint alleges breach of a fiduciary duty. Plaintiff argues that an order was placed contrary to the instructions she gave and that defendant attempted to cover the deficit by liquidating the silver futures contract and also using other funds that plaintiff had on account with defendant to cover the deficit. Such a claim has been found to be an appropriate claim subject to arbitration with respect to a commodities dispute situation. *Marchese v. Shearson Hayden Stone, Inc.,* 734 F.2d at 422–23.

Counts III and IV of plaintiff's complaint are governed by the arbitration agreement. These counts both involve alleged unauthorized trades in plaintiff's commodities account. As such, they clearly present a "controversy arising out of or relating to [plaintiff's] account, to transactions with [defendant] for [plaintiff] or to this agreement or breach thereof ..." and are thus within the scope of the arbitration agreement. Paragraph 1 of the Client Commodity Agreement provides, in relevant part:

> You are hereby authorized, at any time and from time to time without prior notice to the undersigned, to transfer from my (our) Regulated Commodity Futures Account(s) to any other account in Commodities or Securities held by you for me (us) such amount of excess funds which in your judgment may be reasonably required to aviod the calling of margins for, or to reduce a debit balance in such other accounts. This can and may include the purchase of Paine Webber Cash-fund.

(Defendant's Motion to Stay Proceedings, Exhibit A).

In light of the above language the court cannot say "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers" the allegations in Count III and Count IV. *Seaboard Coastline Railroad Co. v. National Rail Passenger Corp.,* 554 F.2d at 660. As the Seventh Circuit stated in a similar situation

that sought to defeat an arbitration agreement, the claims are "intimately founded in and intertwined with the underlying contract obligations." *Hughes Masonry Co. v. Greater Clark County School Building Corp.,* 659 F.2d 836, 841 n. 9 (7th Cir.1981).

This court holds therefore that these claims must be submitted to arbitration as well.

### Conclusion

For the reasons stated above, defendant's motion to compel arbitration is, therefore, GRANTED, and this action is hereby STAYED.